RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 1/25/11
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **DEMETRIUS L. MILTON** | **CIVIL ACTION NO. 08-1854** |
| **VERSUS** | **JUDGE TRIMBLE** |
| **BOISE CASCADE, LLC** | **MAGISTRATE JUDGE KIRK** |

## MEMORANDUM RULING

Before the court is a motion for summary judgment as to all claims by plaintiff in the above-captioned suit.[1] For the reasons expressed below, the court finds that defendant's motion should be **GRANTED** and, accordingly, that all claims by plaintiff against defendant in this suit should be **DISMISSED** with prejudice.

### I. RELEVANT FACTS

Plaintiff Demetrius L. Milton ("plaintiff"), an African-American male, was hired by defendant Boise Cascade, LLC ("defendant" or "Boise Cascade") on or about October 1, 2007.[2] Plaintiff's title was Production Tech I and he was hired on a probationary basis.[3]

The record before the court contains excerpts from plaintiff's employee file. This evidence demonstrates that plaintiff's supervisor, Chad Glorioso ("Glorioso"), rated his performance as

---

[1] R. 25.

[2] R. 1 at ¶ 3.

[3] Exhibit 1 to motion [R. 25-3] at 205:10 - 13.

"good" or "satisfactory" in all areas on his Employee Evaluation of November 14, 2007 and commented that "[plaintiff] is a wonderful employee."[4] On December 11, 2007, plaintiff received a written warning after taking too long of a break. The warning explained that Glorioso suspected that plaintiff was late in returning to his shift because plaintiff was sleeping in the training room, but could not prove it. Glorioso explained that

> [b]eing in your probationary period if I would have caught you sleeping you would have been suspended pending an investigation which probably wouldn't have ended well for you. Also, if you start becoming high maintenance as in occupying a lot of my time because your /sic/ not doing right that's not going to be good either. I think you are a good employee and will be an asset to our team, but I will be watching you very close. So I am asking you never put yourself in that situation again because I assure you it will not end up with the same outcome.[5]

On December 20, 2007, Glorioso authored a written statement detailing an incident of that day in which he again caught plaintiff taking a longer break than was allowed. Glorioso's statement explains that he "gave yet another pass, but warned him that I would be watching and there would be no more passes."[6]

Plaintiff's probationary period ended on December 29, 2007.[7] Plaintiff was written up for unapproved absences on January 26 - 27, February 14 - 15, February 19 - 20, April 4 and April 7,

---

[4]Exhibit 2 to motion [R. 25-3].

[5]Exhibit 3 to motion [R. 25-3].

[6]Exhibit 4 to motion [R. 25-3].

[7]Exhibit 2 to motion [R. 25-3].

2008.[8] He was also issued a verbal warning for another incident involving an extended break on March 12, 2008.[9] On February 21, 2008, plaintiff was issued a written warning on the basis that he did not show up for his shift on that day. This warning was later withdrawn because plaintiff's absence was deemed proper.[10] On May 5, 2008 plaintiff was again written up for unapproved absence and, as a result, suspended from work pending an investigation.[11] Plaintiff was fired, effective May 9, 2008, on the basis of these absence incidents.[12]

Plaintiff filed a complaint with the Equal Employment Opportunity Commission and was issued a right to sue letter.[13] Plaintiff filed the instant suit on November 27, 2008, alleging that he was subjected to intimidation, harassment and discrimination based on race during his employment with Boise Cascade in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000, et seq.).[14] Specifically, plaintiff alleges that he was treated less favorably than other Caucasian employees in terms of absences from work and, further, endured racial slurs and witnessed the display of certain racially offensive items in the workplace, including a noose and a confederate flag.[15] Plaintiff's suit claims damages for "embarrassment, humiliation, lost wages both past, present

---

[8] Exhibit 9 to motion [R. 23-5].

[9] Id.

[10] Exhibit 1 at 80:5-81-19 [R. 23-5]; Exhibit 5 [R. 23-5].

[11] Exhibit 7 [R. 23-5].

[12] Exhibit 13 [R. 23-5].

[13] R. 1 at ¶ 11. The court notes that documentation of plaintiff's EEOC complaint and right to sue letter are not included in the record in this case.

[14] Id. at ¶¶ 2, 12.

[15] Id. at ¶¶ 7, 8.

and future, mental anguish and emotional distress."[16] Plaintiff also prays for attorney fees and costs in this matter.[17]

Boise Cascade filed the instant motion for summary judgment on December 6, 2010. The issued having been briefed by the parties, the motion is now ripe for consideration.

## II. APPLICABLE STANDARD

Summary judgment should be rendered when

> the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[18]

A material fact is one that may affect the outcome of the suit under governing law.[19] A dispute about a material fact is "genuine" when the evidence presented is such that a reasonable jury could return a verdict for the non-moving party.[20] The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.[21]

Once the moving party satisfies its initial burden of proof, the non-moving party must

---

[16] Id. at ¶ 13.

[17] Id. at ¶ 14.

[18] Fed. R. Civ. P. 56(c)(2).

[19] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Phillips Oil Co. v. OKC Corp., 812 F.2d 265 (5th Cir. 1987); St. Amant v. Benoit, 806 F.2d 1294 (5th Cir. 1987).

[20] TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754 (5th Cir. 2002).

[21] Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994).

4

identify specific evidence that demonstrates the existence of a genuine issue of material fact.[22] The non-moving party may not rest on the allegations of the complaint and, further, will not prevent summary judgment by the advancement of conclusory allegations or unsubstantiated assertions.[23]

Evidence offered in support of or in opposition to a summary judgment motion is subject to the Federal Rules of Evidence in the same manner as would be applied to such evidence at trial.[24] The court must view the competent summary judgment evidence before it in the light most favorable to the nonmoving party, but the court will not evaluate the credibility of witnesses, weigh evidence or resolve factual disputes, as such matters lie within the discretion of the fact-finder at trial.[25]

### III.   ANALYSIS

Defendant's motion asserts that plaintiff is unable to demonstrate a prima facie case of discriminatory discharge or hostile work environment based on race and that plaintiff's claims should be dismissed. Plaintiff's response in opposition fails to address these claims and, instead, focuses on the elements necessary to establish a prima facie case of retaliatory discharge based on race. We agree with defendant's reply observation that failure to address these claims upon challenge by summary judgment motion amounts to abandonment of such claims.[26] Accordingly,

---

[22] Celotex, 477 U.S. at 324.

[23] Wallace v. Texas Tech University, 80 F.3d 1042 (5th Cir. 1996); Little, 37 F.3d at 1075.

[24] Martin v. John W. Stone Oil Distributor, Inc., 819 F.2d 547 (5th Cir. 1987).

[25] Anderson, 477 U.S. at 255; International Shortstop, Inc. v. Rally's Inc., 939 F.2d 1257 (5th Cir. 1991); Leonard v. Dixie Well Service & Supply, Inc., 828 F.2d 291, 294 (5th Cir. 1987).

[26] Keenen v. Tejeda, 290 F.3d 252 (5th Cir. 2002); Hargrave v. Fibreboard Corp., 710 F.2d 1154 (5th Cir. 1983).

we consider plaintiff's previously asserted discriminatory discharge and hostile work environment claims abandoned and do not address them here.

Defendant's reply also points out that plaintiff's opposition brief attempts to assert a claim for retaliatory discharge for the first time during this litigation. Defendant argues that neither plaintiff's EEOC discrimination charge, nor his complaint before this court assert such a claim and, for those reasons, plaintiff should not be allowed to raise a retaliatory discharge claim in response to a motion for summary judgment without having first exhausted his administrative remedies as to such claim.

The court has reviewed the EEOC Notice of Charge of Discrimination, offered as evidence by defendant, and agrees that it evidences no claim for retaliatory discharge.[27] In the section of the document entitled "Circumstances of Alleged Discrimination," only the box marked "Race" is selected. The "Issues" listed include only "Harassment."[28] As we noted earlier, plaintiff has not introduced copies of his original EEOC complaint or his subsequent right to sue letter, so we do not have the opportunity to review those items as to this issue.

The filing of an administrative complaint is a prerequisite to the filing of a lawsuit in federal district court under Title VII.[29] "Competing policies underlie judicial interpretation of the exhaustion requirement."[30] As the U.S. Fifth Circuit Court of Appeals explained,

---

[27]R. 31-1.

[28]Id.

[29]42 U.S.C. § 2000e - 5(f)(1); Taylor v. Books A Million, Inc., 296 F.3d 376 (5th Cir. 2002); Tolbert v. U.S., 916 F.2d 245 (5th Cir. 1990).

[30]McClain v. Lufkin Industries, Inc., 519 F.3d 264, 273 (5th Cir. 2008).

> [o]n one hand, the scope of an EEOC charge should be liberally construed for litigation purposes because Title VII "was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 465 (5th Cir. 1970). On the other hand, the "primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC in [an] attempt to achieve non-judicial resolution of employment discrimination claims. Pacheco, 448 F.3d at 788-89. To reconcile these policies, this court construes an EEOC complaint broadly, but in terms of the administrative EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." Sanchez, 431 F.2d at 466. We use a "fact-intensive analysis" of the administrative charge that looks beyond the four corners of the document to its substance. Id. In sum, a Title VII lawsuit may include allegations "like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." Id.[31]

Although, under different factual circumstances, this court would, acting in accord with the Fifth Circuit's instructions above, suspend consideration of this motion and order the parties to supplement the record with copies of plaintiff's EEOC complaint and right to sue letter, we find that, under the undisputed facts of this case, such course of action is unnecessary and that the absence of these items from the record presents no harm.[32]

Assuming, for the sake of this motion, that plaintiff's retaliatory discharge claim is so related

---

[31] Id.

[32] The court notes that, under the Fifth Circuit's reasoning in Bouvier v. Northrup Grumman Ship Systems, Inc., 350 Fed. Appx. 917 (5th Cir. 2009), plaintiff's failure to reference retaliation in his EEOC complaint might be fatal to such claim in this lawsuit. Construing the evidence before us in the light most favorable to the plaintiff as the non-moving party, however, we proceed with our analysis as though a review of the complaint by this court led to the conclusion that the retaliation claim is fairly included or related to plaintiff's discrimination claim.

7

to his stated claims in the EEOC complaint or is of the sort that may be "reasonably...expected to grow out of the charge of discrimination"[33] as would bring it within the ambit of a broad reading of the complaint as instructed above, the court finds that plaintiff's claim fails on the merits.

Title VII provides, in part,

> that it shall be an unlawful employment practice for an employer
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...[34]

Title VII specifically prohibits discrimination by an employer for making charges, testifying, assisting or participating in enforcement proceedings, providing that

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.[35]

A plaintiff, such as the instant plaintiff, prosecuting a claim of retaliatory discharge must demonstrate a prima facie case of retaliation by showing that (1) he engaged in a protected activity; (2) an adverse employment action was taken against him; and (3) a causal link exists between the

---

[33] Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970).

[34] 42 U.S.C. § 2000e-2(a)(1).

[35] 42 U.S.C. § 2000e-3(a).

protected activity and the adverse employment action.[36] If a plaintiff successfully demonstrates a prima facia case of retaliation, the burden shifts to the defendant employer to demonstrate a legitimate, non-discriminatory reason for the adverse employment action.[37] If the defendant employer successfully makes such a showing, plaintiff's claim will survive only upon a showing, by substantial evidence, that the reason offered by defendant employer is merely pretext for a discriminatory motive.[38] The ultimate issue in a retaliatory discharge case is whether or not plaintiff's protected activity under Title VII is a "but for" cause of the adverse employment action.[39] Although plaintiff may demonstrate that participation in a protected activity is one of the causes of the adverse employment action, the court will not impose liability when defendant can show that the adverse employment action would have taken place even without plaintiff's participation in a protected activity.[40]

Our review of the evidence before us indicates that plaintiff has failed to demonstrate a prima facie case of retaliatory discharge. Plaintiff alleges that he was engaged in a protected activity when he complained to management about the hanging of a noose at his work station.[41] Defendant does

---

[36] Turner v. Baylor Richardson Medical Center, 476 F.3d 337, 348 (5th Cir. 2007) citing Fabela v. Socorro Indep. Sch. Dist., 329 F.3d 409, 414 (5th Cir. 2003).

[37] Long v. Eastfield College, 88 F.3d 300 (5th Cir. 1996); Whatley v. Metropolitan Atlanta Rapid Transit Authority, 632 F.2d 1325 (5th Cir. 1980).

[38] Gee v. Principi, 289 F.3d 342 (5th Cir. 2002); Shirley v. Chrysler First, Inc., 970 F.2d 39 (5th Cir. 1992); McMillan v. Rust College, Inc., 710 F.2d 1112, 1116 (5th Cir. 1983).

[39] Long, 88 F.3d at 305, fn. 4, citing McDaniel v. Temple Indep. Sch. Dist., 770 F.2d 1340 (5th Cir. 1985).

[40] Id., citing Jack v. Texaco Research Ctr., 743 F.2d 1129, 1131 (5th Cir. 1984).

[41] R. 29 at p. 4.

not dispute that plaintiff made such complaint.[42]

Title VII of the Civil Rights Act provides that an employee has engaged in a protected activity if he has "opposed any practice made an unlawful employment practice" under Title VII or "made a charge, testified, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.[43] Plaintiff asserts, and defendant does not dispute, that he reported seeing a rope shaped like a noose to Boise Cascade management in April of 2008.[44] We find, under these facts, that plaintiff's report of the appearance of a noose at his work station constituted a "protected activity" for Title VII purposes, as he was reporting threatening or harassing conduct by fellow employees based on his race.[45] We also find, under the facts of this case, that plaintiff's dismissal from employment is an "adverse employment action" and satisfies the second requirement of his prima facie burden.

Reviewing plaintiff's complaint, deposition testimony and memorandum in opposition to defendant's motion, we find that plaintiff fails to demonstrate the required causal connection

---

[42] R. 25-2 at pp. 22 - 24.

[43] 42 U.S.C. § 2000e-3(a).

[44] R. 25-2 at pp. 22-23; R. 29 at pp. 2, 4.

[45] Defendant argues, in conjunction with its motion for summary judgment as to plaintiff's prior hostile work environment claim, that this incident, even when combined with plaintiff's other complaints of the use of the word "coon" and the instance of a co-worker wearing a t-shirt displaying a confederate flag insignia, does not rise to the level of the severe and pervasive conduct which would be required to maintain plaintiff's claim. See, R. 25-2 at pp. 17-22.
  For the purpose of this motion, however, plaintiff need only demonstrate that he had a reasonable belief that discriminatory practices were occurring at his place of employment in order to show that he was engaged in a protected activity by reporting such practices. De Anda v. St. Joseph Hosp., 671 F.2d 850, 853 n. 2 (5th Cir. 1982). Although plaintiff does not specifically allege this, we assume for the sake of this analysis, that plaintiff did possess such reasonable belief, although this is an issue requiring proof, were this case to proceed to trial.

between any protected activity and this adverse employment action. Instead, plaintiff makes the conclusory allegation that his dismissal was based solely on his complaint about the noose.[46] Additionally, defendant demonstrates, and plaintiff does not deny, that he amassed a significant number of absences from work, establishing a legitimate, non-discriminatory reason for plaintiff's dismissal.[47] Moreover, plaintiff produces no evidence of other employees, of any race, with a similar attendance pattern who were treated more favorably. Finally, plaintiff alleges that "most of the absences were excused," but offers no evidence to support this conclusion.[48] Records attached to plaintiff's deposition directly contradict this statement, showing that plaintiff failed to provide medical excuses for many absences.[49]

As explained above, a plaintiff may not preserve his claim, once met with a motion for summary judgment, by vague allegations and unsupported conclusions and also may not simply allege that requisite burdens of proof will be borne at trial. Plaintiff's response in opposition to the instant motion cites no authority or evidence and is wholly vague and conclusory. On this basis and for the reasons stated above and reflected in the evidence before us, the court finds that defendant has demonstrated that plaintiff is unable to offer evidence sufficient to establish a prima facie case of retaliatory discharge. Accordingly, defendant is entitled to judgment as a matter of law as to this claim. Additionally, as above, we find that plaintiff, by failing to respond to the motion as it concerned his claims of hostile work environment and racial discrimination, abandoned such claims,

---

[46] R. 29 at p. 4.

[47] R. 25-2 at pp. 3-4; R. 25-3 at 132:4-9.

[48] R. 29 at p. 4.

[49] Exhibit 11 to R. 25-3 ("Absentee Report").

making dismissal of both of these claims appropriate at this time.

The court will issue a judgment in conformity with these findings.

Alexandria, Louisiana
January 25, 2011

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE